UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| AMEGY BANK N.A.,<br><br>                Plaintiff,<br><br>v.<br><br>DAVID C. ARCH, JERRY D. CHOATE, ROD DAMMEYER, LINDA HUTTON HEAGY, R. CRAIG KENNEDY, HOWARD J. KERR, JACK E. NELSON, HUGO F. SONNENSCHEIN, SUZANNE H. WOOLSEY, Ph.D., and WAYNE W. WHALEN, as Trustees,<br><br>                Defendants,<br><br>- and -<br><br>VAN KAMPEN TRUST FOR INSURED MUNICIPALS; VAN KAMPEN TRUST FOR INVESTMENT GRADE MUNICIPALS; VAN KAMPEN MUNICIPAL OPPORTUNITY TRUST; VAN KAMPEN MUNICIPAL TRUST; VAN KAMPEN SELECT SECTOR MUNICIPAL TRUST; VAN KAMPEN ADVANTAGE MUNICIPAL INCOME TRUST II; VAN KAMPEN OHIO QUALITY MUNICIPAL TRUST; VAN KAMPEN SENIOR INCOME TRUST; VAN KAMPEN TRUST FOR INVESTMENT GRADE NEW YORK MUNICIPALS; VAN KAMPEN PENNSYLVANIA VALUE MUNICIPAL INCOME TRUST,<br><br>                Necessary Party Defendants. | Civil Action No. 09-754 (HAB)<br><br>**AMENDED COMPLAINT** |

1. Plaintiff, by its undersigned attorneys, allege the following upon personal knowledge as to itself and its own acts and upon information and belief as to all other matters based on the investigation made by and through their attorneys, which investigation included, among other things, a review of public documents and news releases, press releases and certain public filings made with the United States Securities and Exchange Commission (the "SEC").

## Jurisdiction and Venue

2. This Court has jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff is a citizen of Texas; none of the Defendants are citizens of Texas; and the matter in controversy exceeds $75,000.

3. This Court has personal jurisdiction over all defendants because all defendants have maintained minimum contacts with this jurisdiction:

    a. All defendants have transacted business in New York related to Plaintiff's claims; and

    b. The Necessary Party Defendant Funds, identified hereinafter, have their principal executive offices in this District.

4. Venue is proper in this District under 28 U.S.C. § 1391 because the Necessary Party Defendant Funds, identified hereinafter, have their principal executive office, advertise and do business in this District.

## The Parties

### Plaintiffs

5. In February, 2009 Plaintiff Amegy Bank N.A. ("Amegy"), a national banking association organized under the laws of the United States with its principal place of business in Houston, Texas, acquired and it presently owns Auction Rate Preferred Stock ("ARPS") issued by the following Van Kampen closed-end funds in the following amounts: Van Kampen Trust for Insured Municipals (par value of ARPS owned is $1,950,000); Van Kampen Trust for Investment

Grade Municipals (par value of ARPS owed is $24,150,000; Van Kampen Municipal Trust (par value of ARPS owned is $2,825,000); Van Kampen Select Sector Municipal Trust (par value of ARPS owned is $6,500,000); Van Kampen Ohio Quality Municipal Trust (par value of ARPS owned is $825,000); Van Kampen Municipal Opportunity Trust (par value of ARPS owned is $8,175,000); Van Kampen Advantage Municipal Income Trust II (par value of ARPS owned is $4,125,000); Van Kampen Senior Income Trust (par value of ARPS owned is $250,000); Van Kampen Trust for Investment Grade New York Municipals (par value of ARPS owned is $350,000); and Van Kampen Pennsylvania Value Municipal Income Trust ($1,700,000).

6. Amegy acquired the ARPS from the original Plaintiffs in this action: Fiore Talarico, Wilhelmina Robertson, Chestnut Oak, Ltd., Cockspur, Inc., Grover, Ltd., Grover G. Geiselman Management Trust, Cullen K. Geiselman Management Trust, David Klein, Donald Botik, and Miracle of Pentecost Foundation, as well as from additional clients of Amegy's subsdiary Amegy Investments, Inc., all of whom owned ARPS issued by Van Kampen, and sold their ARPS at par to Plaintiff Amegy in February, 2009 pursuant to a Release and Assignment Agreement ("Assignment").

7. Pursuant to the Assignment, the original Plaintiffs, along with additional clients of Amegy Bank N.A.'s subsdiary Amegy Investments, Inc., who owned ARPS issued by Van Kampen, assigned to Amegy their claims against the Defendants. Amegy now owns Van Kampen issued ARPS with a combined par value of $50,600,000 and is the successor in interest to the claims against the Defendants.

### The Defendants

8. Defendants David C. Arch (resides in Oak Brook, Illinois), Jerry D. Choate (resides in Dana Point, California), Rod Dammeyer (resides in San Diego, California), Linda Hutton Heagy

2

(resides in Chicago, Illinois), R. Craig Kennedy (resides in Washington, District of Columbia), Howard J. Kerr (resides in Galena, Illinois), Jack E. Nelson (resides in Winter Park, Florida), Hugo F. Sonnenschein (resides in Chicago, Illinois), Suzanne H. Woolsey, Ph.D (resides in Harwood, Maryland), and Wayne W. Whalen (resides in Chicago, Illinois) are trustees of all of the Funds listed below.

## The Necessary Party Defendant Funds

9. Van Kampen Trust for Insured Municipals is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $184.29 million and has $72 million (2,880 shares) in unredeemed ARPS outstanding.

10. Van Kampen Trust For Investment Grade Municipals is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $1,084.77 million and has $428.8 million (17,152 shares) in unredeemed ARPS outstanding.

11. Van Kampen Municipal Opportunity Trust is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $668.03 million and has $272 million (10,880 shares) in unredeemed ARPS outstanding.

12. Van Kampen Municipal Trust is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $708.48 million and has $206 million (10,400 shares) in unredeemed ARPS outstanding.

13. Van Kampen Select Sector Municipal Trust is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset

value of $261.27 million and has $103.2 million (4,128 shares) in unredeemed ARPS outstanding.

14.   Van Kampen Advantage Municipal Income Trust II is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $798.70 million and has $338 million (13,520 shares) in unredeemed ARPS outstanding.

15.   Van Kampen Ohio Quality Municipal Trust is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $117.34 million and has $52 million (2,080 shares) in unredeemed ARPS outstanding.

16.   Van Kampen Senior Income Trust is a closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $841.66 million and has $350 million (14,000 shares) in unredeemed ARPS outstanding.

17.   Van Kampen Trust for Investment Grade New York Municipals is a non-taxable closed-end investment company operating as a Massachusetts business trust and currently has an approximate net asset value of $328,080,000 and has $121,175,000 (4,847 shares) in unredeemed ARPS outstanding.

18.   Van Kampen Pennsylvania Value Municipal Income Trust is a non-taxable closed-end investment company operating as a Pennsylvania corporation and currently has an approximate net asset value of $498,190,000 and has $150,125,000 (6,005 shares) in unredeemed ARPS outstanding.

19.   The above-named Funds are joined as necessary party defendants, pursuant to Fed. R. Civ. P. Rule 19(a), in order to afford the Plaintiffs complete relief.

{2253 / CMP / 00094844.DOC v1}

## Summary of the Claim

20. Amegy is unable to sell or redeem its holdings in ARPS issued by the above-listed Necessary Party Defendant Funds (the "Funds"), for reasons described below.

21. Defendants, as trustees of the Funds that issued the ARPS, owe fiduciary duties to Amegy to redeem Amegy's ARPS at par value promptly, because the market mechanism, established by the Funds in order to provide liquidity for holders of the ARPS, ceased functioning on February 12, 2008.

22. Amegy and its predecessors in interest have been stuck since then holding low-interest-paying preferred stock with no way to cash out their ARPS holdings at par. Amegy continues to suffer enormous economic damages because of the Defendants' continued refusal to redeem Amegy's ARPS.

23. By refusing to redeem Amegy's and its predecessors in interest ARPS although demanded to do so, the Defendants are favoring the Funds' common stockholders over Amegy. The common stockholders benefit because they receive enhanced returns generated from the investment leverage provided by the ARPS holders, including Amegy. However, Amegy does not receive the benefit of owning the ARPS, *i.e.*, their auction rate returns and liquidity. Instead, Amegy receives substantially less than market rates for the leverage it provides and cannot sell its ARPS at par.

24. The Defendants, in their capacity as trustees and directors, owe fiduciary duties under applicable law to redeem Amegy's ARPS promptly, because otherwise, the Funds have offered no opportunity for the redemption of Amegy's ARPS, and Amegy cannot sell its ARPS, except at fire sale prices, and thereby suffer enormous losses. Other closed-end funds' trustees have fulfilled their fiduciary duties by redeeming all or substantial portions of their funds' outstanding

5

ARPS.

25. The Defendants have made affirmative decisions to place the best interests of the common stockholders of the Funds above those of the ARPS holders. In so doing, and in refusing to appropriately balance the competing interests of those two groups, the Defendants have breached their fiduciary duties to the Amegy and its predecessors in interest as preferred stockholders of the Funds. By leaving Amegy stranded and without the ability to liquidate, Defendants are providing the common stockholders with additional leverage, which the common stockholders are receiving at a below-market rate. Moreover, Defendants have compounded their breaches by their continued refusals to fully redeem or refinance all the ARPS held by Amegy, despite the fact that the Defendants understand the illiquid nature of the ARPS market and the fact that the Defendants were previously made aware of these inequities.

26. ARPS, including the ARPS held by Amegy, were not designed or marketed as risky investments, where the purchaser's objective is to profit from a rise in price. They were designed to be market-neutral, like cash. For approximately 20 years, the auction market for ARPS traded successfully at auction with few exceptions. This long history of successful auctions, coupled with no history of any significant auction failures, reinforced the liquid nature of ARPS.

## The ARPS Market

27. The ARPS at issue in this action are preferred stock issued by closed-end investment companies such as the Funds. The interest rates for these ARPS are re-set at predetermined periodic intervals by means of an auction process conducted by an auction agent paid directly by the Funds. The ARPS at issue in this litigation have a par value of $25,000 per share.

28. ARPS were first developed in 1984, and, as of February 12, 2008, closed-end investment companies had approximately $64 billion in ARPS outstanding. The Van Kampen family of

6

closed-end funds had issued approximately $3.3 billion in outstanding ARPS as of February 12, 2008.

29. Historically, the ARPS market was utilized primarily by institutional investors. However, the minimum investment for participation in ARPS was reduced from $250,000 to $25,000, placing ARPS within the reach of a broader array of investors. One closed-end fund issuer believes 90% of its ARPS were held by retail investors.

30. ARPS were conceived to create a funding instrument that behaved like a long-term bond for the issuer, but resembled a short-term security, such as commercial paper, for the investor. Specifically, ARPS are long-term securities, but with interest rates that are to be reset at fixed intervals through the auction process. These interest rate resets are typically done at intervals of one, four, five or seven weeks, although other reset intervals are possible. As designed, the periodic auctions are designed to provide a high degree of liquidity comparable to other very short-term asset classes such as treasuries or cash, with a slightly higher yield.

31. The ARPS auction process was a modified Dutch auction. In the modified Dutch auction for ARPS, broker-dealers for potential purchasers submitted bids to an auction agent designated and paid by the issuer of the ARPS. In the bid, potential purchasers specified to the designated broker-dealer the number of shares they would like to purchase and the lowest interest rate they would be willing to accept for purchasing the preferred stock at par. The bids were collected by the designated broker-dealer and then submitted to an auction agent. The auction agent then assembled the bids and determined the lowest interest rate that would successfully "clear" the auction, by satisfying the supply of available preferred shares (*i.e.*, the number of preferred shares that existing holders want to sell). Holders of ARPS have three options at auction: (a) Hold at Market, which means the holder will retain its ARPS regardless of the new interest rate; (b) Hold

7

at Rate, which means the holder will retain its ARPS at a specific minimum rate; and (c) Sell, which is to sell regardless of the new rate. Buyers may bid to buy a new position at a specified minimum rate.

32. An auction "fails" in the event that there were not enough bids to purchase the available supply of ARPS at a rate less than or equal to the maximum rate set by the issuer. In that event, all existing holders continued to hold the ARPS until the next auction.

33. The auction mechanism, when it functioned, provided liquidity despite the long-term nature of the underlying securities. Until February, 2008, ARPS holders were able to dispose of their ARPS at any of the regularly scheduled auctions.

34. For approximately twenty years, the closed-end fund ARPS auction market, which was only a small percentage of the overall Auction Rate Securities market, traded successfully at auctions with very few exceptions. The auction market provided readily available liquidity for ARPS stockholders over these twenty years. Holders of ARPS, including Amegy's predecessors in interest, reasonably relied on the long history of liquidity in the market when purchasing these ARPS and reasonably believed they were safe short-term liquid investments that were equivalent to cash.

35. The ARPS were not designed or marketed as risky investments, where the purchaser's objective is to profit from a rise in price. They were designed to be market-neutral and liquid, like cash. In fact, over the last twenty years, auction failures were rare occurrences, a fact which created and maintained a reasonable belief among innocent purchasers that there was a highly liquid market for these securities. Indeed, there had been only a handful of failed ARPS auctions that prevented investors from accessing their principal; from 1984 until the end of August 2007, there were only 44 failed auctions—an average of less than two (2) per year.

8

36. On or about February 12, 2008, the entire auction rate securities market, including the ARPS market, failed almost simultaneously. The auction agents, paid directly by the closed-end funds, including the Funds, had usually stepped in to prop up poorly bid auctions by buying the un-bid for shares, decided not to participate and allowed the auctions to fail. The sudden realization that ARPS were not completely liquid led to an avalanche of sell orders and virtually no buy orders. Confidence in the auction process evaporated and is unlikely ever to return.

37. Since the ARPS auctions failed, the interest rate on Amegy's ARPS has been set automatically based on a set reference standard. The Funds' marketing materials described this automatic reset rate following an auction failure as the "Maximum Rate."

38. The Defendants caused the ARPS to be issued for the purpose of providing leverage to boost the yield to the common shares. The strategy is based on the fact that the Funds paid a lower rate of interest to the ARPS holders than the yield the Funds' common stockholders received from investing in long-term holdings. Historically, short-term interest rates have been lower than long-term rates. Until the failure of the auction process, ARPS were effectively short-term investments with a corresponding yield. Following the auction failure, they are now completely illiquid long-term securities yielding below-market short-term rates.

39. Historically, the yield on Amegy's ARPS has been only slightly less than the yield on the common shares issued by the Funds. However, since the auction failures in February, 2008, the Funds' common shares' yield has increased while the ARPS' yield has decreased as the following chart illustrates:

9

| FUND[1] | Common Shares Distribution Rate, 6/29/07 | ARPS Rate, 6/29/07 | Common Shares Distribution Rate, 1/31/08 | ARPS Rate, 2/1/08 | Common Shares Distribution Rate, 1/22/09 | ARPS Rate, 1/22/09 |
|---|---|---|---|---|---|---|
| VKI | 5.75 | 5.28 | 5.95 | 5.48 | 8.37 | 0.99 |
| VMO | 6.55 | 5.09 | 6.80 | 5.42 | 8.40 | 0.29 |
| VKQ | 6.60 | 5.26 | 6.70 | 5.29 | 7.94 | 0.32 |
| VKL | 5.65 | 5.22 | 5.65 | 5.14 | 7.89 | 0.79 |
| VIM | 6.15 | 5.03 | 6.25 | 5.30 | 6.74 | 0.30 |
| VGM | 6.65 | 5.27 | 6.85 | 5.43 | 8.26 | 0.43 |
| VOQ | 6.40 | 5.01 | 6.50 | 5.00 | 6.38 | 0.38 |

40. As a result of the failure of the auction rate market, Amegy and its predecessors in interest are and were stuck holding ARPS and Amegy faces indefinite illiquidity, with no way to sell its ARPS at par and stuck receiving below market interest for holding what has now become essentially a long-term instrument.

41. Other closed-end fund issuers recognize the impact the failure of the auction market has had on the owners of their ARPS and have actively worked to redeem their ARPS at par.

42. Eaton Vance Corp. ("Eaton Vance"), another company engaged in the creation, marketing and management of closed-end investment funds, with approximately $123 billion in assets under management, and issuer of more than $5 billion in closed-end fund ARPS, told the SEC on July 2, 2008 that the lack of liquidity caused by the failure of the ARPS auction market was devastating to ARPS investors:

> As the auction process is no longer functioning and no established secondary market exists that would provide APS [ARPS] stockholders with the liquidation preference of $25,000 per share, there is currently no reliable mechanism for holders of APS [ARPS] Shares, including the Applicants' APS stockholders, to obtain liquidity. The Applicants believe that, industry-wide, the

---

[1] The Funds have been identified by their ticker symbol. The ticker symbols represent the following Funds: Van Kampen Advantage Municipal Income Trust II (VKI); Van Kampen Municipal Opportunity Trust (VMO); Van Kampen Municipal Trust (VKQ); Van Kampen Select Sector Municipal Trust (VKL); Van Kampen Trust for Insured Municipals (VIM); Van Kampen Trust for Investment Grade Municipals (VGM); and Van Kampen Ohio Quality Municipal Trust (VOQ).

10

{2253 / CMP / 00094844.DOC v1}

> current lack of liquidity is causing distress for a substantial number of APS [ARPS] stockholders, creating severe hardship for many investors.

Eaton Vance Amended and Restated Application for an Order Pursuant to Section 6(c) of the Investment Company Act of 1940 for an Exemption from the Provisions of Section 18(a)(1)(A) dated July 2, 2008.

43. Other issuers of closed-end municipal bond fund ARPS recognize their obligations to redeem their failed ARPS. Eaton Vance has redeemed at least 76% ($3.8 billion) of its $5 billion in issued ARPS that experienced auction failures. Eaton Vance has also taken steps to redeem its remaining outstanding ARPS through the development of a new type of security called a Liquidity Protected Preferred share ("LPP"). Eaton Vance's LPPs have received SEC approval and would allow holders of Eaton Vance ARPS to sell their ARPS at par value. The Eaton Vance LPPs provide a cost-effective new form of leverage for its closed-end funds that will facilitate redeeming the balance of Eaton Vance's outstanding ARPS.

44. Eaton Vance has taken additional steps beyond creating a replacement security for ARPS in order to redeem 100% of its outstanding ARPS. In the summer of 2008, Eaton Vance applied to the SEC for an order exempting certain of its funds from Section 18(a)(1)(A) and (B) of the Investment Company Act. The exemption would allow five Eaton Vance closed-end funds to issue debt securities subject to asset coverage of 200%, compared to the usual 300% in required asset coverage. The purpose of the exemption, granted by the SEC on October 23, 2008, is to allow Eaton Vance to issue debt to refinance all of its issued and outstanding ARPS at par while it works to develop the market for LPPs. Two other issuers of closed-end funds with outstanding ARPS, Nuveen Investments (approximately $9 billion in currently outstanding ARPS) and Calamos Advisors LLC (approximately $430 million in currently outstanding ARPS) have also

11

sought this exemption.

45. In its application, Eaton Vance recognized that the trustees of its closed-end funds that had issued ARPS had an obligation and fiduciary duty to provide liquidity to all its ARPS holders because

> [I]t is obligated to manage the fund with regard to the interests of the holders of both the common shares and the APS [ARPS] shares. In light of persistent auction failures, since February 2008, Eaton Vance has been collaborating with other market participants to attempt to develop solutions for restoring liquidity to holders of APS [ARPS] shares and to provide alternative sources of leverage to its closed-end funds. . . . In considering any incurrence of debt to replace the APS [ARPS] shares, the members of each Applicant's Board owe fiduciary duties to the holders of both the common shares and the APS [ARPS] shares and will weigh carefully the benefits and costs of the proposals to the common shareholders and the APS [ARPS] shareholders.

## **Claim for Relief**

## **(Breach of Fiduciary Duty)**

46. Amegy repeats and realleges each and every allegation contained in the foregoing paragraphs, as if fully set forth herein.

47. Defendants owe fiduciary duties to Amegy to govern the Funds fairly and in the best interests of common stockholders and ARPS holders alike, under the laws of the states in which each of the Funds was incorporated.

48. By agreeing to act as trustees or directors of the Funds, Defendants accepted responsibility for doing their best to maintain a liquid market for Amegy's ARPS.

49. Defendants have violated and continue to violate their fiduciary duties to Amegy and its predecessors in interest by failing to act in good faith to resolve the ARPS' lack of liquidity.

50. By allowing Amegy's and its predecessors in interest investments to remain illiquid and

12

of substantially diminished value, the Defendants are providing the Funds' common stockholders with benefits at the expense of the Funds' preferred stockholders, in the form of additional leverage at below-market rates.

51. Defendants have violated their fiduciary duties to Amegy and its predecessors in interest by favoring the interests of the common stockholders of the Funds over the interests of the ARPS holders of the Funds.

52. Amegy's predecessors in interest have duly demanded that the Funds redeem at par or refinance the ARPS held by them. Defendants have refused to direct the Funds to do so, despite their awareness that the auction market they had established to provide liquidity for the ARPS they issued has disappeared, and that Amegy continues to suffer substantial damages.

53. As a direct result of the Defendants' aforedescribed breach of their fiduciary duties, Amegy and its predecessors in interest have suffered and will continue to suffer substantial damages and financial losses.

54. Amegy has no adequate remedy at law.

## Prayer for Relief

**WHEREFORE**, Plaintiff prays for a judgment:

(a) Declaring that the Defendants have breached fiduciary duties to Plaintiff Amegy and its predecessors in interest.

(b) Ordering Defendants to redeem Plaintiff Amegy's ARPS at par value;

(c) Awarding Plaintiff Amegy compensatory damages, including consequential damages, against the Defendants, in amounts to be shown at trial;

13

(d) Awarding Plaintiff Amegy its costs and expenses incurred in this action, including its legal fees;

(e) Granting such other and further relief as the Court may deem just and proper.

DATED:
White Plains, New York
April 3, 2009

_____
Stephen Lowey (SL 7677)
Geoffrey M. Horn (GMH 4179)
LOWEY DANNENBERG COHEN
  & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
(914) 997-0500 (Telephone)
(914) 997-0035 (Facsimile)
slowey@lowey.com
ghorn@lowey.com

**ATTORNEY FOR PLAINTIFFS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMEGY BANK N.A.,<br><br>    Plaintiff,<br><br>v.<br><br>DAVID C. ARCH, JERRY D. CHOATE, ROD DAMMEYER, LINDA HUTTON HEAGY, R. CRAIG KENNEDY, HOWARD J. KERR, JACK E. NELSON, HUGO F. SONNENSCHEIN, SUZANNE H. WOOLSEY, Ph.D., and WAYNE W. WHALEN, as Trustees,<br><br>    Defendants,<br><br>- and -<br><br>VAN KAMPEN TRUST FOR INSURED MUNICIPALS; VAN KAMPEN TRUST FOR INVESTMENT GRADE MUNICIPALS; VAN KAMPEN MUNICIPAL OPPORTUNITY TRUST; VAN KAMPEN MUNICIPAL TRUST; VAN KAMPEN SELECT SECTOR MUNICIPAL TRUST; VAN KAMPEN ADVANTAGE MUNICIPAL INCOME TRUST II; VAN KAMPEN OHIO QUALITY MUNICIPAL TRUST; VAN KAMPEN SENIOR INCOME TRUST; VAN KAMPEN TRUST FOR INVESTMENT GRADE NEW YORK MUNICIPALS; VAN KAMPEN PENNSYLVANIA VALUE MUNICIPAL INCOME TRUST,<br><br>    Necessary Party Defendants. | <br><br>Civil Action No. 09-754 (HAB)<br><br>**RULE 7.1 STATEMENT** |

{2253 / MISC / 00094934.DOC v1}

## RULE 7.1 STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable district judges and magistrate judges of the Court to evaluate possible disqualification or recusal, undersigned counsel for Amegy Bank N.A. (a non-governmental corporate party) makes the following certification:

Amegy Bank N.A is wholly owned by Amegy Holding Delaware, Inc., which is wholly owned by Amegy Corporation. Amegy Corporation is a subsidiary of Zions Bancorporation. Zions Bancorporation owns 10% or more of Amegy Corporation's stock and is a publicly held corporation.

DATED:
White Plains, New York
April 3, 2009

Stephen Lowey (SL 7677)
Geoffrey M. Horn (GMH 4179)
LOWEY DANNENBERG COHEN
 & HART, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310
(914) 997-0500 (Telephone)
(914) 997-0035 (Facsimile)
slowey@lowey.com
ghorn@lowey.com

**ATTORNEY FOR PLAINTIFFS**

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Southern District of New York

AMEGY BANK N.A.,
Plaintiff,

V.

DAVID C. ARCH, et al.,
Defendants.

*Amended*

SUMMONS IN A CIVIL ACTION

CASE NUMBER: 09 Civ. 754 (HAB)

TO: (Name and address of Defendant)

Van Kampen Trust for Investment Grade New York Municipals
522 Fifth Avenue
New York, NY 10036

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Geoffrey M. Horn
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway - Suite 509
White Plains, NY 10601

an answer to the complaint which is served on you with this summons, within    20    days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. M. McMahon
CLERK

Barbara J. Ryan
(By) DEPUTY CLERK

April 3, 2009
DATE

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

__Southern__ District of __New York__

AMEGY BANK N.A.,
Plaintiff,

V.

DAVID C. ARCH, et al.,
Defendants.

*Amended*

**SUMMONS IN A CIVIL ACTION**

CASE NUMBER: 09 Civ. 754 (HAB)

TO: (Name and address of Defendant)

Van Kampen Pennsylvania Value Municipal Income Trust
522 Fifth Avenue
New York, NY 10036

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Geoffrey M. Horn
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway - Suite 509
White Plains, NY 10601

an answer to the complaint which is served on you with this summons, within __20__ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON,

CLERK

(By) DEPUTY CLERK

DATE April 3, 2009