UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMEGY BANK N.A.,

                  Plaintiff,

             -against-.

RICHARD E. CAVANAGH, et al.,

                  Defendants,

             - and -

BLACKROCK MUNIENHANCED FUND, INC., et al.,

                  Necessary Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

09 Civ. 0753 (HB)

ECF CASE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AMEGY BANK N.A.,

                  Plaintiff,

             -against-.

DAVID C. ARCH, et al.,

                  Defendants,

             - and -

VAN KAMPEN TRUST FOR INSURED MUNICIPALS, et al.,

                  Necessary Party Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

09 Civ. 0754 (HB)

ECF CASE

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE AMENDED COMPLAINTS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

SUMMARY OF ALLEGATIONS ....................................................................................... 4

    A.    Original Investments ........................................................................................ 4

    B.    Terms of ARPS Are Contained in Fund Documents ....................................... 5

    C.    Alleged Wrongdoing ........................................................................................ 7

    D.    Assignment and Release ................................................................................... 7

ARGUMENT ....................................................................................................................... 8

    I.    LEGAL STANDARD ....................................................................................... 8

    II.    AMEGY LACKS STANDING TO PURSUE A BREACH OF
           FIDUCIARY DUTY CLAIM ON BEHALF OF THE ORIGINAL
           INVESTORS BECAUSE THE PURPORTED ASSIGNMENTS ARE
           INVALID ......................................................................................................... 9

    III.    DEFENDANTS DID NOT BREACH ANY FIDUCIARY DUTY BY
           FAILING TO REDEEM ARPS ...................................................................... 12

           A.    The Fiduciary Duty Standard ............................................................ 12

           B.    Plaintiff's Claim is Governed by Contractual, Rather Than
                Fiduciary, Principles, And the Contracts Provide No Right of
                Redemption ........................................................................................ 13

           C.    Even Assuming Fiduciary Principles Govern, Amegy Fails to State
                Claim Upon Which Relief May Be Granted ...................................... 17

CONCLUSION ................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007) ...............9

Banks v. Consumer Home Mortgage, Inc., No. 01-CV-8058 (ILG), 2003 WL 21251584 (E.D.N.Y. Mar. 28, 2003) ...............9

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)...............4, 9, 18

BHI Corp. v. Litgen Concrete Cutting & Coring Co., 827 N.E.2d 435 (Ill. 2005) ...............11, 12

Blake v. Smith, No. 0300003B, 2006 WL 4114305 (Mass. Super. Ct. Dec. 11, 2006) ......4, 17, 18

Chokel v. Genzyme Corp., 867 N.E.2d 325 (Mass. 2007) ...............15

Davimos v. Halle, No. 03 Civ. 9199(JGK), 2006 WL 859368 (S.D.N.Y. Mar. 31, 2006) ...........13

DeJong v. B.F. Goodrich, Inc., 292 N.W.2d 157 (Mich. Ct. App. 1980)...............12

In re Eaton Vance Mutual Funds Fee Litigation, 380 F. Supp. 2d 222 (S.D.N.Y. 2005), aff'd sub nom. Bellikoff v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007)...............9

Equity-Linked Investors, L.P. v. Adams, 705 A.2d 1040 (Del. Ch. 1997)...............14, 17

Fraternity Fund Ltd. v. Beacon Hill Asset Management, LLC, 479 F. Supp. 2d 349 (S.D.N.Y. 2007)...............12

Gale v. Bershad, C.A. No. 15714, 1998 WL 118022 (Del. Ch. Mar. 4, 1998) ...............3, 16

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) ...............8

Harbinger Capital Partners Master Fund I, Ltd. v. Granite Broadcasting Corp., 906 A.2d 218 (Del. Ch. 2006)...............14

HB Korenvaes Investments, L.P. v. Marriott Corp., C.A. No. 12922, 1993 WL 205040 (Del. Ch. June 9, 1993) ...............14, 16

International Audiotext Network, Inc. v. American Telephone & Telegraph Co., 62 F.3d 69 (2d Cir. 1995)...............10

International Proteins Corp. v. Ralston-Purina Co., 744 S.W.2d 932 (Tex. 1988) ...............12

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)...............9

Jolly Roger Fund, LP v. Prime Group Realty Trust, No. 24-C-06-010433, 2007 Md. Cir. Ct. LEXIS 10 (Md. Cir. Ct. Aug. 16, 2007)...............14, 15, 17

Knapp v. Neptune Towers Associates,
No. 044211BLS1, 2007 WL 2367743 (Mass. Super. Ct. Aug. 2, 2007) ...........................15

Lessard v. Packard Machinery Co., No. 955523, 1998 WL 1181782 (Mass. Super.
Ct. July 9, 1998) ..................................................................................................................11

McDermott v. Party City Corp., 11 F. Supp. 2d 612 (E.D. Pa. 1998) ...........................................13

McMichael v. U.S. Filter Corp., No. EDCV 99-182VAP (MCX), 2001 WL 418981
(C.D. Cal. Feb. 23, 2001) .....................................................................................................9

Moore Business Forms v. Cordant Holdings Corp., C.A. No. 13911,
1995 WL 662685 (Del. Ch. Nov. 2, 1995) .........................................................................16

In re Nucorp Energy Securities Litigation, 772 F.2d 1486 (9th Cir. 1985) ...................................12

Official Committee of Unsecured Creditors v. Investcorp S.A., 137 F. Supp. 2d 502
(S.D.N.Y. 2001) ..................................................................................................................17

Pulsifer v. Butnaru, No. 03-3374-J, 2006 WL 3008518 (Mass. Super. Ct. Aug. 17, 2006) ..........13

Quadrangle Offshore (Cayman) LLC v. Kenetech Corp., C.A. No. 16362, 1999 WL
893575 (Del. Ch. Oct. 13, 1999), aff'd, 751 A.2d 878 (Del. 2000) ...................................14

Schaad v. Hotel Easton Co., 87 A.2d 227 (Pa. 1952) ....................................................................15

State Street Trust Co. v. Hall, 41 N.E.2d 30 (Mass. 1942) ............................................................16

Strougo v. Bassini, 282 F.3d 162 (2d Cir. 2002) .............................................................................1

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) .................................................9

Thomas v. City of New York, 143 F.3d 31 (2d Cir. 1998) .................................................................8

Vinogradova v. Suntrust Bank, Inc., 875 A.2d 222 (Md. Ct. Spec. App. 2005) ............................13

In re Walt Disney Co. Derivative Litigation, 906 A.2d 27 (Del. 2006) ...................................17, 18

Winston v. Mandor, 710 A.2d 835 (Del. Ch. 1997) ........................................................................14

Zinermon v. Burch, 494 U.S. 113 (1990) .........................................................................................8

**Statutes**

10 Del. C. § 6302(c) (2008) .............................................................................................................10

Md. Code Ann., Cts. & Jud. Proc. § 3-1402(c) (West 2008) .........................................................10

M.G.L.A. c. 231B, § 1(c) (West 2008) ................................................................11

N.Y. Gen. Oblig. Law § 15-108(c) (McKinney 2008) .........................................11

42 Pa. Cons. Stat. Ann. § 8324(c) (West 2008) ..................................................10

Defendants respectfully submit this memorandum of law in support of their motion for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing the Amended Complaints in the captioned actions for failure to state a claim for relief.

## PRELIMINARY STATEMENT

These actions were filed on January 26, 2009, by former holders (the "Original Investors") of auction rate preferred stock ("ARPS") issued by closed-end funds sponsored by BlackRock and Van Kampen (the "Funds").[1] The Original Investors – who purchased their ARPS from Amegy Bank, N.A. ("Amegy" or the "Plaintiff"), acting in its capacity as a broker – alleged in the original complaints that the Defendants, who are trustees or directors of the Funds,[2] breached fiduciary duties owed to the ARPS holders by failing to redeem the ARPS at par value after the Original Investors became unable to sell their ARPS at auctions designed to match up willing sellers and purchasers.  One month after the original complaint was filed, Amegy purchased the ARPS at issue in this action at par value from the Original Investors.  In conjunction with those purchases, the Original Investors allegedly assigned Amegy their interest in this lawsuit.  In the Amended Complaints, Amegy is the sole plaintiff.

As a threshold matter, Amegy lacks standing to maintain the only claim it has asserted – a breach of fiduciary duty claim demanding that the Funds redeem Amegy's ARPS at par value.  This claim originally was asserted by the Original Investors, who subsequently

---

[1]    A "closed-end" fund is one that "has a fixed number of outstanding shares, so that investors who wish to acquire shares in the fund ordinarily must purchase them from a shareholder rather than, as in open-end funds, directly from the Fund itself." Strougo v. Bassini, 282 F.3d 162, 165 (2d Cir. 2002).

[2]    Amegy has joined the Funds as "Necessary Party Defendants" solely for the purpose of attempting to obtain the principal relief sought in their complaints – the Funds' redemption of the ARPS allegedly held by Amegy.

assigned the claim to Amegy after commencing this lawsuit.  That assignment was effected

pursuant to an agreement whereby the Original Investors settled the claims they had against

Amegy arising out of their own earlier purchase of ARPS from Amegy, their broker.[3]  Under the

terms of the settlement, Amegy acquired all of the Original Investors' ARPS at par value, the

Original Investors released Amegy from all claims the Original Investors had against Amegy

with respect to the ARPS, and the Original Investors assigned to Amegy all claims they had

against the Defendants for redemption of their ARPS.  The purported assignment to Amegy was

ineffective, however, because as a settling joint tort-feasor, Amegy has no right to seek

contribution from its alleged "co-tort-feasors," i.e., the Defendants, to recoup the settlement

payments it made to acquire the Original Investors' ARPS.  Indeed, as a matter of law, Amegy

cannot circumvent the applicable statutory and common law bar against contribution from non-

settling (alleged) joint tort-feasors by purporting to accept an assignment of claims against the

Defendants.  Amegy therefore lacks standing to sue the Defendants for redemption of the ARPS

it purchased from the Original Investors.

       Amegy not only lacks standing to sue, its breach of fiduciary claim is legally

defective.  According to the Amended Complaints, Defendants purportedly had a fiduciary duty

to refrain from "favoring the interests of the common stockholders of the Funds over the interests

of the ARPS [i.e., the preferred] holders of the Funds."  (BR Compl. ¶ 69; VK Compl. ¶ 51.)  But

as a matter of law, the Defendants owe fiduciary duties to preferred shareholders, if at all, solely

with respect to rights, if any, they share equally with common shareholders, such as a right to

---

[3]      The Original Investors apparently accused Amegy, along with others, of making false and misleading representations concerning the safety and liquidity of ARPS.  See ¶¶ 21-26 of the Complaint in Max Blankfeld v. Merrill Lynch & Co., Inc., No. 4:2009cv00162 (S.D. Tex. filed Jan. 23, 2009), attached as Exhibit A to the accompanying Declaration of Seth M. Schwartz (the "Schwartz Declaration").

vote on corporate transactions. Here, however, the Funds' preferred and common stock have no shared right of redemption. Although Amegy dedicates many paragraphs in its Complaint to discussing recent events in the auction rate securities market, including failed auctions and the redemption of auction rate preferred securities by another group of funds, it fails to address the governing fund documents that specify its contractual rights and preferences as an ARPS holder. These fund documents do not confer the right of redemption Amegy claims to possess in the Amended Complaints. In fact, they expressly provide that the ARPS holders have no right to redemption following a failed auction. Amegy's thinly-veiled attempt to avoid relevant contract provisions by casting its claim as one for breach of fiduciary duty cannot evade controlling law holding that actions taken pursuant to governing contractual provisions are not subject to question under fiduciary principles. See, e.g., Gale v. Bershad, C.A. No. 15714, 1998 WL 118022, at *5 (Del. Ch. Mar. 4, 1998) (Jacobs, V.C.) (finding that preferred stockholders failed to state a claim for breach of fiduciary duty by redeeming shares at a time that benefited common stockholders because the certificate of designation addressed the issue).

Thus, even if, as Amegy alleges, defendants' alleged refusal to redeem constituted disparate treatment of the common at the expense of the preferred, such treatment was expressly authorized under the terms of the ARPS. As a matter of law, there is and can be no breach of any alleged duty where, as here, the terms of a preferred security are enforced as written, even if that allegedly disadvantages the preferred relative to the common.

Even assuming, however, that Amegy's claim is governed by fiduciary principles, the Amended Complaints still fall short of stating a cause of action for breach of fiduciary duty. The Amended Complaints contain no factual allegations legally sufficient to support an inference that the Defendants breached any of the fiduciary duties of care, loyalty, or good faith. Amegy's

3

conclusory assertion that the Defendants failed "to act in good faith to resolve the ARPS' lack of liquidity" (BR Compl. ¶ 67; VK Compl. ¶ 49) misses the mark under both applicable substantive and procedural law. See, e.g., Blake v. Smith, No. 0300003B, 2006 WL 4114305, at *6 (Mass. Super. Ct. Dec. 11, 2006) (must allege subjective bad faith or actual intent to harm); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) (stating that labels and conclusory assertions fail to satisfy Federal Rule of Civil Procedure 12(b)(6)).

For these reasons, and as explained further below, the Court should grant Defendants' motion to dismiss the Amended Complaints in their entirety.

## SUMMARY OF ALLEGATIONS

### A.    Original Investments

The Original Investors are former holders of shares of ARPS issued by the Funds, which are closed-end funds registered with the SEC under the Investment Company Act of 1940. Following commencement of this lawsuit, the Original Investors sold all of their ARPS to Amegy at par value.

ARPS are preferred shares for which interest rates or dividends are determined at periodic auctions where ARPS holders may sell their shares if demand is sufficient. (BR Compl. ¶ 44; VK Compl. ¶ 27.) For the Funds issuing the ARPS, these securities are an alternative to variable-rate financing instruments which the Funds use to provide leverage to the common shares also issued by the Funds, thereby increasing the yield to the holders of the common shares. For purchasers of ARPS, the securities typically offered higher yields than other short-term investment alternatives and provided shareholders with liquidity, i.e., the ability to sell their shares, through the auction process.

ARPS were auctioned at regular intervals through a so-called "Dutch auction." At these auctions, bidders submitted the lowest yield (interest rate) they were willing to accept,

4

and the auction manager filled the bids with the available securities.  The auction process

identified the clearing rate, the lowest yield necessary to sell all securities.  However, in the

event that the auction agent did not receive enough bids to purchase all available shares, the

auction "failed" and all existing holders retained their ARPS.

　　　As Amegy alleges, the market for all auction rate securities, including ARPS,

failed in February 2008 and has not recovered since then.  (BR Compl. ¶ 53; VK Compl. ¶ 36.)

As a result, the yield on ARPS has been set at the "Maximum Rate" specified in the prospectuses

issued by the Funds in connection with the sale of these securities.  (BR Compl. ¶ 54; VK Compl.

¶ 37.)  ARPS continue to accrue dividends at this rate as auctions continue to fail, and there is

limited or no existing secondary market for these securities.

**B.**　　**Terms of ARPS Are Contained in Fund Documents**

　　　Certain of the Funds are organized as corporations under the law of Maryland.

The other Funds are organized as business trusts under the law of Delaware, Massachusetts, or

Pennsylvania.  With respect to the ARPS issued by the Maryland corporations, the terms of the

ARPS – i.e., the rights, preferences and limitations of the securities – are set forth in each

company's Charter and Articles Supplementary (the "Articles").  The terms of the ARPS issued

by the Delaware business trusts are set forth in each trust's Statement of Preferences (the

"Statements"), and the terms of the ARPS issued by the Massachusetts and Pennsylvania

business trusts are contained in each trust's Certificates of Vote (the "Certificates") (collectively,

the "Issuing Documents").[4]

---

[4]　　Samples of Issuing Documents and Prospectuses are attached as Exhibits B-F to the
Schwartz Declaration.  These documents may be considered by the Court because they
have been publicly filed with the SEC and state governments and their terms are referred
to in the Amended Complaint's discussion of dividend rates and the auction process.  See
pp. 8-9, infra.

Among other things, the Issuing Documents expressly address the parties' respective rights and obligations with respect to redemption of the ARPS. Specifically, the Issuing Documents grant the Funds the option to redeem shares of the ARPS, (Certificate at Section 3, p. 7; Articles at p. 42, providing that the Fund[s] may redeem ARPS "at its option"),[5] and establish the procedures governing such optionable redemptions. (Certificate at Section 3, pp. 7-8; Articles at p. 42-43.) The Issuing Documents also specify the conditions under which the Funds would be obligated to redeem the ARPS, such as Fund liquidation, none of which applies in the current case. (Certificate at Section 3, pp. 8-9; Articles at pp. 43-45.)

The Issuing Documents do not guarantee that ARPS auctions will succeed. Moreover, they explain the auction process at length. (Certificate at Section 5, p. 57; Articles at Section 10, pp. 66-83.) Significantly, the Issuing Documents impose no obligation whatsoever on the Funds or Defendants to redeem the ARPS following a failed auction or to maintain a liquid market for the ARPS.

The material terms of the ARPS also are disclosed in the prospectuses issued and disseminated by each of the Funds in connection with the sale of ARPS. Specifically, the prospectuses reveal, among other things, that:

- Rates would be determined by periodic auction (BR Prospectus at 35-41; VK SIT Prospectus at 1, 35-37; VK IG Prospectus at 2, 4-6, 48-54.)[6]

---

[5]     The Certificate issued by the Van Kampen Senior Income Trust is attached as Exhibit B to the Schwartz Declaration; the Articles issued by the BlackRock MuniYield Fund, Inc. are attached as Exhibit C. The provisions relating to the ARPS auction process are representative of the provisions in the Issuing Documents issued by the other Funds.

[6]     The prospectuses issued by the BlackRock MuniYield Fund, Inc. ("BR Prospectus"), Van Kampen Senior Income Trust ("VK SIT Prospectus"), and Van Kampen Merritt Trust for Investment Grade New York Municipals ("VK IG Prospectus") are attached as Exhibits D, E and F, respectively, to the Schwartz Declaration. The disclosures in the Prospectus are representative of the disclosures in the prospectuses issued by the other Funds.

- The auctions could fail to attract sufficient bids, in which case ARPS holders would be unable to sell their shares (BR Prospectus at 8; VK SIT Prospectus at 5, 26; VK IG Prospectus at 44-45.)
- In the event of an auction failure, the rates would be set at the "Maximum Applicable Rate" (BR Prospectus at 8, 39; VK SIT Prospectus at 33; VK IG Prospectus at 6-8.)
- The Funds were not required to redeem shares in the event of an auction failure (BR Prospectus at 8; VK SIT Prospectus at 26; VK IG Prospectus at 56-58.)
- There could be no assurance of a secondary market for ARPS to provide liquidity (BR Prospectus at 8; VK SIT Prospectus at 5, 26; VK IG Prospectus at 10, 47.)

**C.**     **Alleged Wrongdoing**

   Amegy alleges that the Defendants, as directors or trustees of the Funds, owed fiduciary duties to the holders of the ARPS, including a duty to govern the Funds "in the best interests of common stockholders and ARPS holders alike"  (BR Compl. ¶ 65; VK Compl. ¶ 47), and to "do[] their best to maintain a liquid market for Amegy's ARPS."  (BR Compl. ¶¶ 66-67; VK Compl. ¶¶ 48-49.)  Amegy claims that the Defendants breached these duties by refusing to cause the Funds to redeem the ARPS held by Amegy and the Original Investors, thereby "favoring the interests of the common stockholders of the Funds over the interests of the ARPS holders of the Funds."  (BR Compl. ¶¶ 68-70; VK Compl. ¶¶ 50-52.)  In its prayer for relief, Amegy seeks entry of an order compelling the Funds to redeem its ARPS at par value.  Amegy also seeks an award of unspecified compensatory damages.

**D.**     **Assignment and Release**

   Amegy was the broker that sold the ARPS to the Original Investors.  Following service of the original complaints in these actions, the Original Investors entered into a Release and Assignment Agreement with Amegy (the "Assignment").  (BR Compl. ¶ 6; VK Compl. ¶ 6.)  The Assignment purports to settle and release all claims that the Original Investors had against Amegy as broker to the Original Investors.  Under the terms of the Assignment, (i) Amegy repurchased all ARPS held by the Original Investors at par value; (ii) the Original Investors

7

released all of their claims against Amegy relating to ARPS; and (iii) the Original Investors assigned to Amegy all of their claims against the Defendants "for damages equal to the par value of the [ARPS]" previously held by the Original Investors. (Assignment ¶¶ 1-2, Schwartz Decl. Exhibit G.) Amegy also purchased ARPS held by others of its clients. (BR Compl. ¶¶ 6-7; VK Compl. ¶¶ 6-7.) The settlement with Amegy thus provided the Original Investors the relief they requested in the original complaints: par value for their ARPS. Amegy repurchased the ARPS with full knowledge of the fact that there is no current market for the ARPS (although dividends continue to be paid).

## ARGUMENT

## I.      LEGAL STANDARD

On a motion to dismiss, the complaint's allegations are accepted as true, and the courts must draw all reasonable inferences in favor of plaintiff. Zinermon v. Burch, 494 U.S. 113, 118 (1990); Thomas v. City of New York, 143 F.3d 31, 37 (2d Cir. 1998). A court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). Although a complaint does not need "detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks, citations, and alterations omitted). Indeed, a plaintiff must assert "enough facts to state a claim to relief that is plausible on its face." Id. at 570. This "plausibility standard" is a flexible one, "oblig[ing] a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis omitted).

In deciding a motion to dismiss, in addition to the complaint, courts "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff" when bringing the suit.  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007); see also In re Eaton Vance Mut. Funds Fee Litig., 380 F. Supp.2d 222, 225 (S.D.N.Y. 2005), aff'd sub nom. Bellikoff v. Eaton Vance Corp., 481 F.3d 110 (2d Cir. 2007).  Courts may also consider matters subject to judicial notice, including matters of public record.  See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007); Banks v. Consumer Home Mortgage, Inc., No. 01-CV-8058 (ILG), 2003 WL 21251584, at *6 n.7 (E.D.N.Y. Mar. 28, 2003) (taking judicial notice of public record on file with Secretary of State for Georgia); McMichael v. U.S. Filter Corp., No. EDCV 99-182VAP (MCX), 2001 WL 418981, at *8 (C.D. Cal. Feb. 23, 2001) (taking judicial notice of certificate of incorporation in Delaware).  When considering such documents, courts are "not constrained to accept the allegations of the complaint in respect of the construction of the [documents]."  Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

## II.   AMEGY LACKS STANDING TO PURSUE A BREACH OF FIDUCIARY DUTY CLAIM ON BEHALF OF THE ORIGINAL INVESTORS BECAUSE THE PURPORTED ASSIGNMENTS ARE INVALID

The attempt by the Original Investors to assign their claims to Amegy is invalid as a matter of law.  The Original Investors had claims against Amegy as the broker that sold them ARPS, and these claims have since been settled.  Amegy's attempt to acquire the Original Investors' claims to defray its settlement expenses is an illegitimate attempt to evade limits on joint tort-feasor contribution.  As an alleged tort-feasor that settled and discharged claims asserted against it by the Original Investors, Amegy is prohibited from seeking contribution from

the Defendants – alleged joint tort-feasors – by <u>any</u> means, much less by means of accepting an assignment of the Original Investors' claims against the Defendants.

As noted, the Funds are organized under the laws of Delaware, Maryland, Massachusetts, and Pennsylvania. In Delaware, the statute governing contribution between or among joint tort-feasors provides that "[a] joint tort-feasor who enters into a settlement with the injured person is <u>not</u> entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement." 10 Del. C. § 6302(c) (2008) (emphasis added). Maryland's and Pennsylvania's contribution statutes are to the same effect, as is New York's General Obligations law (the "GOL"). <u>See</u> Md. Code Ann., Cts. & Jud. Proc. § 3-1402(c) (West 2008) ("A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort-feasor whose liability to the injured person is not extinguished by the settlement."); 42 Pa. Cons. Stat. Ann. § 8324(c) (West 2008) ("A joint tort-feasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tort -feasor whose liability to the injured person is not extinguished by the settlement."); N.Y. Gen. Oblig. § 15-108(c) (McKinney 2008) ("A tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person."). Each of these statutes precludes Amegy from taking an assignment of the Original Investors' claims in order to seek what effectively would be contribution from the Defendants for the settlement payments Amegy has made to the Original Investors in exchange for a release of its own liability.

Massachusetts imposes similar limits on joint tortfeasors' contribution claims. Massachusetts' contribution law, M.G.L.A. c. 231B, § 3, bars a tortfeasor's claim for contribution where a signed settlement agreement entered into prior to judgment releases only

the parties to the agreement and does not discharge the common liability.  See  M.G.L.A. c.

231B, § 3(d) (West 2008) ("If there is no judgment for the injury against the tortfeasor seeking

contribution, his right of contribution shall be barred unless he has either (1) discharged by

payment the common liability . . . or (2) agreed while action is pending against him to discharge

the common liability . . . .").  Further, a settling tortfeasor may not recover contribution from

another tortfeasor for any amount paid "which is in excess of what was reasonable."  Id.

§ 1(c).  Massachusetts courts consistently apply M.G.L.A. c. 231B to reject contribution claims

by a joint tortfeasor where he has not discharged common liability.  See, e.g., Lessard v. Packard

Machinery Co., No. 955523, 1998 WL 1181782, at *2 (Mass. Super. Ct. July 9, 1998)

(dismissing contribution claim where settlement did not extinguish common liability).

   Other courts construing similar statutory provisions have concluded that an

alleged tort-feasor cannot use an assignment of claims to circumvent the prohibition against

contribution from alleged joint tort-feasors.  For example, in BHI Corp. v. Litgen Concrete

Cutting & Coring Co., 827 N.E.2d 435 (Ill. 2005), the court refused to enforce an assignment of

plaintiffs' claims to settling defendants, holding that it amounted to an improper "end-run"

around an Illinois statute prohibiting settling tortfeasors from seeking contribution from non-

settling joint tortfeasors. 827 N.E.2d at 441 (noting that "[l]ooks are not deceiving.  Whether the

recovery sought by the settling defendants is grounded upon the Contribution Act or the

assignments, it is still contribution from a nonsettling tortfeasor.").

   Courts also have rejected such assignments as contrary to public policy.  As stated

by one court in language equally applicable here:  "it is contrary to public policy to permit a joint

tortfeasor the right to purchase a cause of action from a plaintiff to whose injury the tortfeasor

contributed."  Int'l Proteins Corp. v. Ralston-Purina Co., 744 S.W.2d 932, 934 (Tex. 1988).

Accord DeJong v. B.F. Goodrich, Inc., 292 N.W.2d 157, 159-60 (Mich. Ct. App. 1980).

Accordingly, Amegy lacks standing to sue the Defendants for the claims purportedly assigned by

the Original Investors.

In the absence of a valid assignment of the Original Investors' claims, moreover,

Amegy cannot cure its standing problem by relying on its own purchase of the ARPS from the

Original Investors. Indeed, as a matter of law, "state law claims [are] not automatically

transferred when the underlying security [is] sold." In re Nucorp Energy Sec. Litig., 772 F.2d

1486, 1492-93 (9th Cir. 1985). Accord Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC,

479 F. Supp. 2d 349, 373 (S.D.N.Y. 2007). Thus, Amegy's purchase of ARPS from the Original

Investors and others does not transfer the Original Investors' claims to Amegy without a valid

assignment.

## III.   **DEFENDANTS DID NOT BREACH ANY FIDUCIARY DUTY BY FAILING TO REDEEM ARPS**

### A.   **The Fiduciary Duty Standard**

Whether couched as the assigned claims of the Original Investors or as Amegy's

own claims as holders of ARPS, Amegy's claims also should be dismissed for failure to state a

claim for breach of fiduciary duty, the only claim alleged in the Amended Complaints. Under

Delaware law, to state a claim for breach of fiduciary duty, a plaintiff must adequately plead

facts sufficient to show (i) the existence of such a duty, and (ii) the breach of that duty by the

defendant. See Davimos v. Halle, No. 03 Civ. 9199(JGK), 2006 WL 859368, at *13-14

(S.D.N.Y. Mar. 31, 2006) (denying plaintiffs' motion for partial summary judgment). The

standard in Massachusetts and Pennsylvania is similar, requiring a plaintiff to show the existence

of a duty, a breach of the duty, causation of harm, and damages. See, e.g., Pulsifer v. Butnaru,

No. 03-3374-J, 2006 WL 3008518, at *3 (Mass. Super. Ct. Aug. 17, 2006) (rejecting claim that

close corporation shareholders breached fiduciary duty by unequal stock redemption); McDermott v. Party City Corp., 11 F. Supp. 2d 612, 626 n.18 (E.D. Pa. 1998) ("The elements the plaintiff must prove in claim of breach of fiduciary duty are: '(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit . . . was a real factor in bring(ing) about plaintiff's injuries.'" (quoting Pa. S.S.J.I. (Civ.) § 4.16 (1991))). As shown below, the duty alleged by Amegy – the duty to redeem its ARPS – does not exist as a matter of Delaware or Massachusetts law.\

Amegy fares no better under Maryland law. Maryland does not recognize an independent tort for breach of fiduciary duty. See Vinogradova v. Suntrust Bank, Inc., 875 A.2d 222, 230-31 (Md. Ct. Spec. App. 2005). Moreover, Maryland recognizes no duty to provide any benefit to preferred shareholders beyond the rights specified in the applicable agreement governing the terms of the preferred shares, in this case the Funds' Articles and Statements of Preferences. Jolly Roger Fund, LP v. Prime Group Realty Trust, No. 24-C-06-010433, 2007 Md. Cir. Ct. LEXIS 10, at *26-27 (Md. Cir. Ct. Aug. 16, 2007). Because the Funds have no contractual obligation to redeem ARPS under the circumstances alleged by Amegy here, the breach of duty claims also fail as a matter of Maryland law.

**B.    Plaintiff's Claim is Governed by Contractual, Rather Than Fiduciary, Principles, And the Contracts Provide No Right of Redemption**

Under Delaware law, the Defendants owe fiduciary duties to preferred shareholders, if at all, only to the extent that the rights of common stock and preferred stock intersect. Harbinger Capital Partners Master Fund I, Ltd. v. Granite Broad. Corp., 906 A.2d 218, 224 (Del. Ch. 2006). Accord Quadrangle Offshore (Cayman) LLC v. Kenetech Corp., C.A. No.

13

16362, 1999 WL 893575, at *8 (Del. Ch. Oct. 13, 1999), aff'd, 751 A.2d 878 (Del. 2000). For example, where both securities have voting rights, the directors may owe fiduciary duties of candor to the shareholders of both types of securities when soliciting their votes. HB Korenvaes Invs., L.P. v. Marriott Corp., C.A. No. 12922, 1993 WL 205040, at *5-6 (Del. Ch. June 9, 1993). Absent any such intersection, however, the rights of preferred stockholders are contractual in nature and courts applying Delaware law "look to the [preferred's] certificate of designation to determine a preferred stockholder's rights." Harbinger, 906 A.2d at 224. Accord Equity-Linked Investors, L.P. v. Adams, 705 A.2d 1040, 1042 (Del. Ch. 1997) ("The special protections offered to the preferred are contractual in nature."); Winston v. Mandor, 710 A.2d 835, 836 (Del. Ch. 1997) ("I conclude [controlling stockholders] do not owe fiduciary duties [to preferred stockholders] if the transactions are specifically contemplated by the corporate certificate of designations.").

       Maryland, Massachusetts, and Pennsylvania law are in accord with Delaware law on this point. As one Maryland court recently held, preferred shareholders' rights "are expressly limited to their preferred shareholder agreement." Jolly Roger Fund, LP, 2007 Md. Cir. Ct. LEXIS 10, at *20, *26 (dismissing complaint with prejudice as "[u]nder Maryland law, shareholders of preferred stock are only entitled to the preferential rights enumerated in the applicable agreement between the parties"); cf. Schaad v. Hotel Easton Co., 87 A.2d 227, 229 (Pa. 1952) ("The relation between a corporation and a preferred shareholder is one of contract, especially as to the preferential rights secured by the terms of the issue."). Similarly, under Massachusetts law "[w]hen rights of stockholders arise under a contract . . . the obligations of the parties are determined by reference to contract law, and not by the fiduciary principles that would otherwise govern." Chokel v. Genzyme Corp., 867 N.E.2d 325, 330-31 (Mass. 2007)

(citing Blank v. Chelmsford Ob/Gyn, P.C., 649 N.E.2d 1102, 1105 (Mass. 1995)). Consequently, a breach of fiduciary duty claim fails as a matter of law where, as here, a contractual provision governs the challenged conduct of a board of directors or trustees. Id.; see also Knapp v. Neptune Towers Assocs., No. 044211BLS1, 2007 WL 2367743, at *5 (Mass. Super. Ct. Aug. 2, 2007) (finding that plaintiff failed to state breach of fiduciary duty claim where partnership agreement addressed defendants' conduct).

Amegy's alleged right of redemption is not a right shared equally with the common shareholders of the Funds. On the contrary, it is an alleged preferential right. Thus, under the law of Delaware, Maryland, and Massachusetts, the Funds' Issuing Documents, i.e., their Articles, Statements, and Certificates, determine what right, if any, Amegy has with respect to redemption of ARPS it holds. As previously noted, the Issuing Documents expressly address the Funds' obligations to redeem the ARPS, and no such obligation exists in the event of a failed auction. Plaintiff cannot now rewrite the terms of the governing instruments to add an additional circumstance under which the ARPS must be redeemed. See State Street Trust Co. v. Hall, 41 N.E.2d 30, 35 (Mass. 1942) ("The instrument, which appears to be complete and comprehensive, having provided for two methods by which the trust might be wound up by the voluntary action of the trustees or the shareholders, the plaintiffs have no right to engraft upon the instrument a third method."). Because Amegy's right of redemption, if any, has "a clearly contractual source," Amegy's "claim for breach of fiduciary duty, as alleged, is legally deficient." Moore Bus. Forms v. Cordant Holdings Corp., C.A. No. 13911, 1995 WL 662685, at *6 (Del. Ch. Nov. 2, 1995).

Amegy's allegation that by "refusing to appropriately balance the competing interests of those two groups, the Defendants have breached their fiduciary duties to the Plaintiffs as preferred stockholders of the Funds" in no way alters the conclusion that Amegy's

claim is governed by contract principles. (BR Compl. ¶ 42; VK Compl. ¶ 25; emphasis added.)

Courts have consistently found that preferred stockholders fail to state a claim for breach of

fiduciary duty where, as here, the directors' alleged conduct comports with the applicable

corporate charter provision, but plaintiffs nevertheless allege that the directors acted for the

benefit of a particular class of stockholders. See, e.g., Gale v. Bershad, C.A. No. 15714, 1998

WL 118022, at *5 (Del. Ch. Mar. 4, 1998) (Jacobs, V.C.) (finding that preferred stockholders

failed to state a claim for breach of fiduciary duty by redeeming shares at a time that benefited

common stockholders because the certificate of designation addressed the issue); HB Korenvaes

Invs. L.P., 1993 WL 205040, at *6 (dismissing breach of fiduciary duty claim where the

certificate "govern[ed] the propriety" of a spin-off alleged to impair the rights of the preferred

stockholders); Jolly Roger, 2007 Md. Cir. Ct. LEXIS 10 (noting that preferential rights follow

from contract, finding no such rights violated, and dismissing claim that corporate property was

liquidated to enrich common stockholder at expense of preferred shareholders).

Accordingly, as a matter of law, there is no merit to Amegy's allegation that in

declining to redeem the Original Investors' ARPS, which the Defendants have the absolute right

to do, the Defendants purportedly breached "their fiduciary duties by favoring the interests of the

common stockholders ... over the interests of the ARPS holders. . . ." (BR Compl. ¶ 69; VK

Compl. ¶ 51.) As explained by Judge Cedarbaum:

> while a board is required to respect the contractual rights and
> protections conferred on the preferred shareholders by their stock
> certificate, "the imposition by the board of . . . economic risks
> upon the preferred stock which the holders of the preferred did not
> want" by virtue of a board decision "taken for the benefit largely of
> the common stock," does not constitute a breach of duty.

Official Comm. of Unsecured Creditors OF Color Tile, Inc. v. Investcorp S.A., 137 F. Supp. 2d

502, 512 (S.D.N.Y. 2001) (emphasis added) (quoting Equity-Linked Investors, 705 A.2d at

1042).

**C.    Even Assuming Fiduciary Principles Govern, Amegy
Fails to State Claim Upon Which Relief May Be Granted**

The fiduciary duties of directors encompass three often intertwined duties: care,

loyalty, and good faith. Blake v. Smith, No. 0300003B, 2006 WL 4114305, at *6 (Mass. Super.

Ct. Dec. 11, 2006).  The Complaint purports to assert a cause of action for breach of the duty of

good faith.  (See BR Compl. ¶ 67; VK Compl. ¶ 49, "Defendants have violated and continue to

violate their fiduciary duties to Amegy and its predecessors in interest by failing to act in good

faith to resolve the ARPS' lack of liquidity.")  Issues of good faith are "intertwined with the

duties of care and loyalty."  In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 65 (Del. 2006).

A breach of the fiduciary duty to act in good faith occurs where a director's conduct is motivated

by subjective bad faith, which is an actual intent to do harm, or where the director has engaged in

a dereliction of duty or a conscious disregard for his or her responsibilities.  Id. at 64, 66

(emphasis added); Blake, 2006 WL 4114305, at *7.  Gross negligence, "including a failure to

inform one's self of available material facts," without more, falls short of constituting a breach of

fiduciary duty to act in good faith.  In re Walt Disney Co., 906 A.2d 27 at 64-65.

However, Amegy does not – because it cannot – allege that the Defendants'

decisions not to redeem Amegy's ARPS at par value were motivated by subjective bad faith or

was made with the actual intent to do harm.  Moreover, Amegy fails to allege any facts that

would support an inference that the Defendants' decisions constitute a conscious disregard of

their responsibilities.  Allegations of "labels and conclusions" cannot withstand a motion to

dismiss.  Twombly, 550 U.S. at 555.  Therefore, Amegy's claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully submit that their motion to dismiss should be granted in all respects.

Dated: April 23, 2009

SKADDEN ARPS SLATE MEAGHER
& FLOM LLP

By:   /s/ Seth Schwartz
    Seth M. Schwartz
    Seth.Schwartz@skadden.com
    Paolo J. Cammarota
    Paolo.Cammarota@skadden.com
    Four Times Square
    New York, NY 10036
    (212) 735-3000

    Attorneys for Defendants
    Richard S. Davis, Henry Gabbay and the
    BlackRock Necessary Party Defendants

    DEBEVOISE & PLIMPTON LLP
    John S. Kiernan
    jskiernan@debevoise.com
    Shannon R. Selden
    srselden@debevoise.com
    919 Third Avenue
    New York, NY 10022
    (212) 909-6082

    Attorneys for Defendants
    Richard E. Cavanagh, Karen P. Robards, G.
    Nicholas Beckwith III, Kent Dixon, Frank J.
    Fabozzi, Kathleen F. Feldstein, James T. Flynn,
    Jerrold B. Harris, R. Glenn Hubbard, W. Carl
    Kester, and Robert S. Salomon, Jr.

SKADDEN ARPS SLATE MEAGHER
& FLOM LLP

Lauren E. Aguiar
Lauren.Aguiar@skadden.com
Four Times Square
New York, NY 10036
(212) 735-3000

Charles F. Smith (*pro hac vice* motion pending)
Charles.Smith@skadden.com
Lee P. Garner (*pro hac vice* motion pending)
Lee.Garner@skadden.com
333 West Wacker Drive
Chicago, Illinois 60606
(312) 407-0700

Attorneys for Defendants
David C. Arch, Jerry D. Choate, Rod Dammeyer,
Linda Hutton Heagy, R. Craig Kennedy, Howard
J. Kerr, Jack E. Nelson, Hugo F. Sonnenschein,
Suzanne H. Woolsey, Ph.D., Wayne W. Whalen
and the Van Kampen Necessary Party
Defendants